23028

SANTEE PORTLAND CEMENT COMPANY, Appellant v.
DANIEL INTERNATIONAL CORPORATION, Respondent.

(384 S. E. (2d) 693)

Supreme Court

*James W. Logan, Jr., Steven C. Kirven* of *Watkins, Van-
diver, Kirven, Gable & Gray,* Anderson, and *Charles H.
Williams* of *Williams & Williams,* Orangeburg, *for appellant.*

*Jay Bender* of *Belser, Baker, Barwick, Ravenel & Bender,* Columbia, *for respondent.*

Heard Oct. 3, 1988.

Decided June 5, 1989.

HARWELL, Justice:

This appeal involves the application of the "discovery rule" to contract actions. We affirm in part, reverse in part, and remand.

## I. FACTS

On May 18, 1965, Santee Portland Cement Company (Santee) entered into a contract with Daniel International Corporation (Daniel) for the construction of a cement plant at Santee's place of business in Orangeburg, South Carolina. The plant was to be constructed in accordance with plans and specifications prepared by Daniel. As part of the contract, Daniel and its sub-contractors constructed a cement storage silo complex consisting of twelve circular concrete silos, six interstices, and three pocket bins.

In 1969, a small crack was found in one of the pocket bins, known as Bin #12. This crack was repaired by Marbury-Pittillo, Daniel's sub-contractor on the project, for $2000.00.

In 1975, another crack appeared in Bin #12. Santee contacted the W & P Construction Company (W & P), consisting of Mr. Frank Wall and Mr. Pittillo (both previously of Marbury-Pittillo). W & P repaired the crack. Santee introduced testimony that W & P characterized this as "permanent repair" of Bin #12, and that W & P inspected the remaining silos and advised that they were in good condition. Santee's witnesses characterized the repairs as relatively minor in nature compared to the annual maintenance costs on the $2,000,000 project.

On September 12, 1980, another of the pocket bins, Bin #13, ruptured causing extensive damage. Cement from the silo covered the weigh station, burying an "eighteen-wheeler" which was parked nearby. Two people were killed in the collapse. Bin #13 and the remaining silos were then examined by experts. Investigation revealed that #13, as well as the remaining silos were all structurally unsound

and in need of repair. Experts testified that steel reinforcement rods were improperly spaced and tied together, weakening the walls and resulting in collapse.

Santee commenced an action in April 1986 alleging causes of action in tort and contract and pleading for a total of $750,000 for damages due to the collapse of Bin #13 and $2,120,000.00 for loss of capacity and the cost of construction to correct the remaining silos.

The trial court granted summary judgment on the tort cause of action, ruling that appellant's exclusive remedy was in contract. The trial court also granted Daniel's motion for a directed verdict as to the contract cause of action, holding it barred by the statute of limitations. This appeal follows.

## II. DISCUSSION

A. "DISCOVERY RULE"

The trial court held that Santee's cause of action for breach of contract was barred by the statute of limitations. *See* S. C. Code Ann. § 15-3-530(1) (1976) (six year period in which to bring a contract cause of action). Santee urged the court to apply the "discovery rule," under which the statute would begin to run when Santee either knew or should have known the contract had been breached. The trial court rejected the applicability of the "discovery rule." We disagree and hold that the "discovery rule" is applicable to contract actions governed by § 15-3-530(1).

One policy behind the statute of limitations is the protection of a defendant from false or fraudulent claims that might be difficult to disprove if not brought until after relevant evidence has been lost or destroyed and witnesses have become unavailable. *Gates Rubber Company v. USM Corporation*, 508 F. (2d) 603 (7th Cir. 1975). It affords defendants an opportunity to gather evidence while facts are still fresh. *April Enterprises, Inc. v. KTTV*, 147 Cal. App. (3d) 805, 195 Cal. Rptr. 421 (2d Dist. 1983) citing *Davies v. Krasna*, 14 Cal. (3d) 502, 121 Cal. Rptr. 705, 535 P. (2d) 1161 (1975). This concern must be balanced against a plaintiff's interest in prosecuting an action and pursuing his rights. Plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed. *April Enter-*

*prises, Inc., supra.* "[S]tatutes of limitation which are susceptible to judicial construction should not be applied mechanically but rather construed in the manner most consistent with both their underlying purposes and the requirements of substantial justice for all parties involved." *Gattis v. Chavez*, 413 F. Supp. 33, 39 (D.S.C. 1976).

The "discovery rule" has previously been applied, either judicially or legislatively, to other causes of action under § 15-3-530. In 1976, a South Carolina District Court held the "discovery rule" applicable in medical malpractice cases. *Gattis v. Chavez, supra.* Prior to *Gattis*, the statute of limitations had remained substantially untouched by the legislature since 1870. Only two sub-sections of the statute originally contained "built-in" discovery provisions.[1] The *Gattis* court refused to interpret the existence of "built-in" provisions for these two causes of action, but not for any others, to mean that the legislature intended to reject the discovery rule in cases of medical malpractice. Shortly after the *Gattis* decision, the South Carolina legislature enacted S. C. Code Ann. §§ 15-3-535 and 15-3-545 (Supp. 1987). Section 15-3-535 extended the "discovery rule" to actions governed by § 15-3-530(5) (actions for criminal conversation or for any other injury to the person or rights of another, not arising on contract . . .).[2] Section 15-3-545 created a special "discovery rule" for medical malpractice actions.

In 1979, this Court addressed the applicability of the "discovery rule" to actions for professional negligence and recognized that ". . . the accrual upon discovery rule represents the more equitable and rational view." *Mills v. Killian*, 273 S. C. 66, 70, 254 S. E. (2d) 556, 558 (1979). In the same year, a South Carolina District Court held the discovery rule applicable to actions brought under 15-3-530(3) (action for trespass upon or damage to real property) and § 15-3-530(4) (action for taking, detaining or injuring any goods or chattels including an action for the specific recovery of personal property). *Campus Sweater & Sportswear v. M. B. Kahn Construction*, 515 F. Supp. 64 (D.S.C. 1979).

---

[1] 15-3-530(7)—fraud; 15-3-530(9)—actions against directors and stockholders of banks.

[2] ". . . all actions initiated under Item 5 of § 15-3-530 as amended, shall be commenced within six years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action."

The question now before us is whether the "discovery rule" should be further extended to apply to actions governed by § 15-3-530(1) (action upon a contract, obligation or liability, express or implied... ). Daniel contends that the doctrine of *"inclusio unius est exclusio alterious"*—the inclusion of one is the exclusion of the other—must be adhered to in this case. Daniel argues that because the legislature enacted special discovery provisions in §§ 15-3-535 and 15-3-545 and did not act with reference to any of the other sections of § 15-3-530, we must assume that the legislature decided against application of the discovery rule to these actions. We disagree.

"When legislative history is inadequate or unavailable, the inclusion of certain provisions in a statute may be *some* evidence that the exclusion of others was purposeful, but the weight accorded this evidence may vary." *Gattis, supra* at 37. Considering these two provisions in light of the fact that they were enacted just after *Gattis*, it appears that the legislature addressed issues raised by the *Gattis* decision. There is nothing to indicate that the legislature considered the applicability of the rule to other causes of action.

Daniel also contends that *Livingston v. Sims*, 197 S. C. 458, 15 S. E. (2d) 770 (1941), which held that an action for breach of contract accrues at the time of the breach, although substantial damages are not sustained until afterward, is controlling authority. We disagree. In recent years, the trend has been toward recognition and expansion of the discovery rule. *See, e.g., Mills v. Killian, supra.* We see no justification for refusing to extend the discovery rule to contract causes of action. To the extent that *Livingston* is inconsistent with this conclusion, it is overruled.

B. NOTICE

The trial court ruled that even if it were to apply the "discovery rule" to Santee's contract claim, this claim was still timebarred because Santee knew or should have known it had a cause of action against Daniel in 1969 (first crack in Bin #12) or at least in 1975 (second crack in Bin #12). Santee asserts that this was error. We agree.

In ruling on a directed verdict motion, the trial court must view the evidence and all favorable inferences in a light most favorable to the non-moving party, and if

more than one reasonable inferfence can be drawn from the testimony, the case should be submitted to the jury. *King v. North River Insurance Company*, 278 S. C. 411, 297 S. E. (2d) 637 (1982). If any evidence tends to prove the allegations of the complaint, the motion for directed verdict must be denied. *Ringer v. Graham*, 286 S. C. 14, 331 S. E. (2d) 373 (Ct. App. 1985).

Santee introduced expert testimony that the defects in the silos were latent; the defective placement of the steel reinforcements was not detectable because the rods were inside the concrete walls. Although Santee did exprience cracks in Bin #12 prior to the 1980 collapse of Bin #13, experts testified that small cracks are common in cement structures. Repairs of Bin #12 totalled approximately $11,000 and were characterized as relatively small for the $2,000,000 project. Further testimony was introduced that Daniel's sub-contractor characterized the repairs to # 12 as permanent and inspected the remaining silos and found them to be in good condition. Santee also introduced evidence that the silos were inspected visually by employees and periodically checked by the Mine Safety and Health Administration.

All of the evidence introduced went to the reasonableness of Santee's actions, which was an issue to be decided by the jury. *Brown v. Finger*, 240 S. C. 102, 124 S. E. (2d) 781 (1962).

## II. CONCLUSION

We reverse the trial court as to the following: 1) finding that the "discovery rule" is not applicable to contract actions; and 2) finding that even applying the "discovery rule" to Santee's contract claim, such claim was still time-barred because Santee had notice of defects in the project in 1975 at the latest, this being a question of fact for the jury. Appellant's remaining exceptions are dismissed pursuant to Supreme Court Rule 23.

Affirmed in part; reversed in part; and remanded.

CHANDLER and FINNEY, JJ., concur.

GREGORY, C. J., and LITTLEJOHN, Acting J., dissent in separate opinion.

GREGORY, Chief Justice, dissenting:

I respectfully dissent. I disagree with the majority's decision to overrule valid precedent of this Court regarding application of the discovery rule to an action for breach of contract.

In *Livingston v. Sims*, 197 S. C. 458, 15 S. E. (2d) 770 (1941), this Court specifically held that in an action for breach of contract, the statute of limitations begins to run at the time the cause of action accrues. This occurs when the defendant breaches its duty to the plaintiff. In so holding, the Court stated:

> The fact that substantial damages were not discovered or did not occur until later is of no consequence. The act itself, which is the ground of action, cannot be legally separated from its consequences. Were this so, successive actions might be brought in many cases of contract and tort as the damages developed, although all the consequential injuries had one common root in the single original breach or wrong. 197 S. C. at 464, 15 S. E. (2d) at 773.

The legislature has since enacted S. C. Code Ann. §§ 15-3-530(5) and 15-3-535 (Supp. 1988) which apply the discovery rule to actions for injuries *not arising on contract*. Since the legislature has so recently rejected the discovery rule as to actions for breach of contract, I would yield to its judgment in this matter. Cases cited from the federal district court are not controlling or even persuasive here.

Applying *Livingston v. Sims* to the facts at hand, I would hold the statute of limitations ran six years from Daniel's completion of its performance of the contract in 1966 and affirm the circuit court's ruling that Santee's action was barred.