586 S.E.2d 565

**Benjamin Burrus Anthony CAMBURN and Bethanne Camburn, Respondents,**

**v.**

**Susan Lynn SMITH, Stephen Biebel, Terry Smith, and David Markley,**

**of whom Susan Lynn Smith and Terry Smith are Appellants.**

**In re Laura Biebel a/k/a Laura Biebel–Smith, Kacie Smith, and David Markley, minor children.**

**No. 25701.**

Supreme Court of South Carolina.

Heard June 12, 2003.

Decided Aug. 18, 2003.

Rehearing Denied Oct. 8, 2003.

Irby E. Walker, Jr., of Conway, for appellant.

Anita R. Floyd, of Conway, for respondent.

Deborah B. Dantzler, of Conway, guardian ad litem for minors Laura Biebel and Kacie Smith.

Randall K. Mullins, of N. Myrtle Beach, guardian ad litem for minor David Markley.

Acting Chief Justice MOORE.

Appellants (Mother and Husband) appeal the family court's order allowing respondents (Grandparents) visitation with Mother's three children pursuant to S.C.Code Ann. § 20–7–420(33) (Supp.2002). Appellants contend the statute was unconstitutionally applied. We agree and reverse.

## FACTS

Grandparents, who are Mother's parents, brought this action in January 2001 seeking visitation with their grandchildren—Laura (age 13), Kacie (age 11), and David (age 2). Laura was born while Mother was married to Stephen Biebel whose whereabouts are now unknown. After her brief marriage to Biebel, Mother married Husband, to whom she is still married, and gave birth to Kacie. During a period of separation from Husband, Mother conceived and gave birth to her son, David, by David Markley. All three children reside with Mother and Husband, who is a long-distance trucker and comes home only on weekends. Markley is incarcerated and Mother brings David to visit him on weekends.

Mother, Husband, and Markley contested Grandparents' visitation. Mother testified she did not want her children visiting Grandparents because she felt it was not a "healthy environment." She objects that Grandfather drinks, uses abusive language, and denigrates the children's fathers. Because Grandfather was physically and mentally abusive to her when she was a child, she does not consider him her father. Husband and Markley concurred in Mother's reasons for denying visitation. Grandfather did not testify.

On March 12, 2002, the family court entered its final order allowing Grandparents weekend visitation with the children

every fourth weekend, one full week of visitation in the summer, reasonable telephone contact, and daytime visitation on December 27 each year. The family court also ordered the payment of guardian ad litem and attorney's fees. Mother and Husband appeal.

## ISSUES

1. Does the application of § 20–70–420(33) in this case violate due process?

2. Should the award of attorney's fees and guardian ad litem fees be reversed?

## DISCUSSION

### 1. Due Process Clause

Section 20–7–420(33) provides:

**The family court shall have exclusive jurisdiction:**

. . .

(33) To order periods of visitation for the grandparents of a minor child where either or both parents of the minor child is or are deceased, or are divorced, or are living separate and apart in different habitats [1] regardless of the existence of a court order or agreement, and upon a written finding that the visitation rights would be in the best interests of the child and would not interfere with the parent/child relationship.[2] In determining whether to order visitation for the grandparents, the court shall consider the nature of

---

1. The family court found Husband "stays at [Mother's] home on those weekends he is in town" but concluded Mother and Husband were separated as required under § 20–7–420(33). There has been no appeal from the finding of separation.

2. We note the family court failed to find that the ordered weekend visitation will not interfere with Husband's relationship with Kacie or with Markley's relationship with his son David. Husband testified his job prevents him from being home except on weekends and visitation with Grandparents would interfere with his time with Kacie. Markley testified weekend visitation would interfere with his relationship with David since Mother brings the child to visit him on weekends. There has been no appeal, however, from the family court's failure to make the requisite findings.

the relationship between the child and his grandparents prior to the filing of the petition or complaint.

In applying this statute, the family court found there was no evidence to "justify" appellants' decision denying visitation and visitation was in the children's best interest. Appellants contend this application of § 20–7–420(33) violates their due process rights.

It is well-settled that parents have a protected liberty interest in the care, custody, and control of their children. This is a fundamental right protected by the Due Process Clause. *Troxel v. Granville,* 530 U.S. 57, 65–66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

Under *Troxel,* the court must give "special weight" to a fit parent's decision regarding visitation. 530 U.S. at 69–70, 120 S.Ct. 2054. A court considering grandparents' visitation over a parent's objection must allow a presumption that a fit parent's decision is in the child's best interest:

> [S]o long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

*Troxel,* 530 U.S. at 68–69, 120 S.Ct. 2054 (parenthetical in original). Parental unfitness must be shown by clear and convincing evidence. *Greenville County Dept. of Soc. Servs. v. Bowes,* 313 S.C. 188, 437 S.E.2d 107 (1993); *see also Roth v. Weston,* 259 Conn. 202, 789 A.2d 431 (2002).

The presumption that a fit parent's decision is in the best interest of the child may be overcome only by showing compelling circumstances, such as significant harm to the child, if visitation is not granted. *See Blixt v. Blixt,* 437 Mass. 649, 774 N.E.2d 1052 (2002); *Stacy v. Ross,* 798 So.2d 1275 (Miss.2001). The fact that a child may benefit from contact with the grandparent, or that the parent's refusal is simply not reasonable in the court's view, does not justify government interference in the parental decision. *See Glidden v. Conley,* 820 A.2d 197 (Vt.2003).

In sum, parents and grandparents are not on an equal footing in a contest over visitation. Before visitation

may be awarded over a parent's objection, one of two evidentiary hurdles must be met: the parent must be shown to be unfit by clear and convincing evidence, or there must be evidence of compelling circumstances to overcome the presumption that the parental decision is in the child's best interest.

Turning to the facts here, there has been no finding of parental unfitness or, more particularly, that Mother, the parent to all three children, is unfit. The family court concluded visitation would be in the children's best interest as a stabilizing factor in their lives in light of Mother's perceived instability. The court noted the following: Mother had a child with Markley while she was married to Husband; she took the children to Maryland with Markley when Markley fled there to avoid arrest and during this time their whereabouts were unknown to Husband; the children were not enrolled in school for the few months they lived in Maryland;[3] and Mother was involuntarily committed to psychiatric care by Grandmother upon her return from Maryland.

It is uncontested, however, that the children are well-cared for by both Mother and Husband. Husband has been a father not only to his own daughter, Kacie, but to Mother's older daughter, Laura, as well. Regarding all three children, Husband testified he "has been in their life" although he acknowledges that David is Markley's biological son.

There is no clear and convincing evidence here that Mother or Husband is unfit, nor did the family court make any such finding. Further, there are no compelling circumstances to overcome the presumption that this decision by fit parents is in the children's best interest. In applying § 20–7–420(33), the court erroneously required these parents to "justify" their decision and found those reasons unsatisfactory. Because the family court's application of § 20–7–420(33) unduly interfered with appellants' parental rights in the care, custody, and control of their own children, we reverse the order allowing Grandparents visitation.

---

3. Mother testified the children were home-schooled during this time.

### 2. Guardian ad litem and attorney's fees.

The family court ordered Mother to pay $3,500 in attorney's fees and ordered both Mother and Husband to pay a certain percentage of fees for each of the two guardians ad litem. Appellants contend they should not have to pay these fees if the order granting visitation is reversed. We agree.

An award of attorney's fees will be reversed where the substantive results achieved by counsel are reversed on appeal. *Sexton v. Sexton*, 310 S.C. 501, 427 S.E.2d 665 (1993). Similarly, where guardian ad litem fees are incurred in an action that is found meritless on appeal, the party instigating the action should pay. *See Hucks v. Dolan*, 288 S.C. 468, 343 S.E.2d 613 (1986); *Schwartz v. Schwartz*, 311 S.C. 303, 428 S.E.2d 748 (Ct.App.1993). Accordingly, we reverse the order assessing attorney's fees and guardian ad litem fees against Mother and Husband.

**REVERSED.**

WALLER, BURNETT, PLEICONES, JJ., and Acting Justice C. VICTOR PYLE, JR., concur.